Case: 4:26−cv−14181
Assigned To : Kumar, Shalina D. Referral Judge: Patti, Anthony P. Assign. Date : 10/30/2026
Description: CMP HARRIS v. DANNY'S MIRACLE ANGEL NETWORK: D−MAN FOUNDATION (tt)

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF MICHIGAN — SOUTHERN DIVISION**

HERBERT HARRIS JR., Plaintiff,

v.

DANNY'S MIRACLE ANGEL NETWORK: D-MAN FOUNDATION, Defendant.

Case No.: ___________________ Judge: ___________________

## COMPLAINT FOR EMPLOYMENT RETALIATION AND RACE-BASED HOSTILE WORK ENVIRONMENT — JURY DEMAND

Plaintiff Herbert Harris Jr., appearing pro se, alleges the following based on personal knowledge, identified documents, and, where indicated, information and belief:

### PARTIES, JURISDICTION, COVERAGE, AND ADMINISTRATIVE EXHAUSTION

**1.** Plaintiff is a Black man who resides in Wayne County, Michigan. He worked for Defendant from approximately December 2018 until January 30, 2026, in creative production and recording roles including Creative Director.

**2.** Defendant is the Michigan nonprofit corporation registered as DANNY'S MIRACLE ANGEL NETWORK: D-MAN FOUNDATION. Michigan's business-entity registry identifies Ziad Kassab as its registered agent and lists its address as 22000 Northwestern Highway, Southfield, Michigan 48075. The same organization is identified in EEOC Charge No. 471-2026-01936 and the August 4, 2026 Notice of Rights as 'Dannys Miracle Angel Network DMAN.'

**3.** This Court has federal-question jurisdiction under 28 U.S.C. § 1331 over claims under 42 U.S.C. § 1981 and Title VII, 42 U.S.C. § 2000e et seq.; the Court has supplemental jurisdiction under 28 U.S.C. § 1367 over related Michigan Elliott-Larsen Civil Rights Act claims. Venue is proper in this judicial district because the conduct challenged occurred in the Eastern District of Michigan.

**4.** For purposes of Title VII coverage, Defendant disputed whether DMAN, considered alone, employed the statutory minimum number of employees. Plaintiff alleges on information and belief that DMAN and related Danny’s home-health operations may qualify as an integrated employer based on the employment-control facts below. Whether the entities are sufficiently integrated and employed at least fifteen qualifying employees for the required twenty calendar weeks remains to be determined from their employment and corporate records. Plaintiff does not rely on merely sharing services or an affiliation as conclusive proof of Title VII coverage.

5. In March 2024, Danny’s Home Healthcare human-resources leadership communicated and directed Plaintiff’s pay-classification change and related timekeeping expectations, while acknowledging earlier payroll discrepancies. A benefits enrollment record identified 'Danny’s Home Health Care, Inc.' as employer and 'Danny’s Miracle Angel Network/Staff' as division. At an August 31, 2023 review at the Rochester office, founder Ziad Kassab discussed Plaintiff’s performance and compensation in the presence of DMAN leadership and Danny’s human-resources personnel. Kassab initially proposed an hourly conversion and then stated that Plaintiff’s salary status would not change that day. Plaintiff further alleges that after DMAN's then-executive director, Lexus Kejbou, departed in or about May 2024, Ziad Kassab served as DMAN's interim executive director until Bobby Efros assumed that position. Plaintiff alleges these events are relevant to common management and centralized control of employment decisions.

**6.** Danny's Home Health Care human-resources director Jessica Moss participated by telephone with DMAN Executive Director Bobby Efros during Plaintiff's January 30, 2026 termination meeting, as Plaintiff identifies her from the recorded discussion. In a February 11, 2026 reply concerning

Plaintiff's post-termination benefits inquiry, Moss used Danny's Home Health HR correspondence identifying her as Director of Human Resources and Recruitment. Plaintiff does not yet know what role Moss played in deciding, rather than communicating or administering, the termination. Plaintiff alleges that the identity of the common HR employer, actual labor-relations authority, management structure, qualifying worker relationships, and employee counts during the required twenty weeks are principally documented in the organizations' records.

**7.** Plaintiff signed an amended EEOC charge, No. 471-2026-01936, on February 2, 2026, concerning race- and sex-related compensation treatment and retaliation, including his January 30 discharge. The EEOC issued its Determination and Notice of Rights on August 4, 2026 and sent official electronic notice on August 5, 2026. Plaintiff downloaded the notice on August 8, 2026. A copy of the Notice is attached as Exhibit A.

**8.** Plaintiff understands that a related investigation with the Michigan Department of Civil Rights remained pending in October 2026. Plaintiff does not allege that it extends the Title VII filing deadline.

## FACTUAL ALLEGATIONS

**9.** Plaintiff’s work included music and media production, creative direction, recording, and client sessions. His personnel records contain favorable evaluations as well as earlier attendance and documentation concerns.

**10.** An August 31, 2023 performance review addressed attendance, engagement, and permission for remote work. In the recorded meeting, Ziad Kassab initially described a proposed written performance-improvement process. Plaintiff questioned that designation for what he understood to be an initial discussion at that level and requested that the matter be treated as a verbal warning. Kassab ultimately called it verbal while retaining a ninety-day review period. Kassab also proposed converting Plaintiff from salary to hourly pay; after Plaintiff objected and raised longstanding discrepancies in salary payments, Kassab stated that no pay change would occur that day. Plaintiff later continued to dispute the written documentation and requested an opportunity to add his comments. A signed December 12, 2023 follow-up stated that all PIP concerns had improved and identified a $57,500 annual salary effective February 1, 2024 and a conditional quarterly bonus.

**11.** On November 7, 2023, Plaintiff emailed DMAN executive director Lexus Kejbou, copying Ziad Kassab, objecting to how his performance plan was documented. He also reported a prior client-session incident in which a client referred to a hanging noose, suggested Plaintiff would not mind the subject, and a coworker appeared to agree and laughed. Plaintiff wrote that he found the comments hurtful and had addressed the coworker directly. Plaintiff alleges that the email informed senior leadership of a race-related workplace concern before the later 2025 complaints.

**12.** On March 28, 2024, Danny’s Home Healthcare HR announced that Plaintiff would be reclassified from salary to hourly, stating that only management employees would remain salaried. HR represented that Plaintiff’s rate and benefits would remain the same. Plaintiff objected to the policy’s application, noting that his Creative Director offer assigned production-management and engineer-supervision duties. He also questioned what he understood to be different treatment of two white female music therapists who continued to receive salary, while recognizing that their positions were not identical to his.

**13.** The March 28, 2024 HR communication acknowledged $2,694 in historical payroll discrepancies and promised repayment. Plaintiff raised those payroll concerns and the reclassification issue in written correspondence. The historical pay dispute is alleged principally as background to HR involvement and employment-control decisions; this complaint does not assert a separate wage-and-hour cause of action.

**14.** During 2025, a white program client used the N-word, including in music, and made threats of harm involving persons who challenged the language. Plaintiff reported concerns. An October 1, 2025 email from another employee also raised concerns about racial language and threats.

**15.** During DMAN's 2025 facility transition, Plaintiff raised the client's racial language and threats with founder Ziad Kassab. Plaintiff recalls Kassab minimizing the racial language and indicating that he or Executive Director Bobby Efros would address it before the client returned. The client later resumed sessions. Plaintiff alleges that the anticipated corrective conversation did not occur before the return, based in part on subsequent written communications with Ryan Kassab; Plaintiff does not claim to know the contents of every private management-client conversation.

**16.** On November 17, 2025, the same client referred to Plaintiff as 'Kunta Kinte.' Plaintiff reported this incident in writing. Ryan Kassab subsequently acknowledged in text messages deficiencies in the earlier response and communication regarding the client's return.

**17.** Plaintiff also reported what he perceived as markedly different responses to threats by a Black client and by the white client in his complaints. Both had made threats relating to the session environment; Plaintiff understood that the Black client was removed promptly, while the white client returned after the building move and was addressed only following later conduct. The incidents involved different individuals and circumstances, and Plaintiff does not claim race alone establishes the reason for the different outcomes.

**18.** On Sunday, December 7, 2025, founder Ziad Kassab telephoned Plaintiff and asked about his morale, whether he remained happy working there, and his demeanor. Plaintiff responded that he maintained professional performance regardless of personal concerns. Plaintiff does not know the undisclosed reason for the call.

**19.** At a December 8, 2025 leadership meeting attended by Executive Director Bobby Efros and others, Plaintiff raised repeated race-based language, threats, employee safety, management's earlier response, and his intention to file a formal discrimination complaint. Participants also discussed a recently disclosed report of a possible weapon-related incident involving the same client at a different facility; Plaintiff did not witness that incident and does not allege a weapon was displayed at DMAN. Efros heard Plaintiff's statement of intent to file a formal discrimination complaint.

**20.** After the December 8 meeting, Plaintiff alleges heightened scrutiny of his schedule and timekeeping. In or around January 20, 2026, Plaintiff was warned about a potential write-up for lateness. Plaintiff discussed attendance expectations with Efros on January 22. In a January 23 email, Plaintiff documented his understanding of that discussion, including his report that other employees also arrived late. The email represents Plaintiff's contemporaneous account, not a management-signed acknowledgment.

**21.** Personnel materials later supplied to Plaintiff include a discharge/counseling form and annotated January time records. The form is undated and its employee acknowledgment and management signatures are blank in the produced copy. Plaintiff states it was not furnished to him for review before or at termination. It includes minute-specific attendance observations whose sources Plaintiff has not verified.

**22.** Plaintiff disputes knowingly falsifying hours or company records. The employer's later statement to the EEOC asserted that Plaintiff recorded hours not worked and invoked earlier performance concerns. Plaintiff acknowledges the 2023 attendance discussion, including the requirement to obtain approval for remote work, and that his employer could enforce legitimate timekeeping rules; he disputes whether the alleged inaccurate entries were reliably established, fairly investigated, or the actual reason for the termination.

**23.** On January 30, 2026, Executive Director Bobby Efros terminated Plaintiff's employment, with Danny's Home Health Care HR participating by telephone. Plaintiff seeks discovery concerning who

investigated the cited time records, who recommended termination, and which officials made or approved the decision.

**24.** Plaintiff alleges that senior leadership knew of the repeated race-related complaints and the stated intention to report formally before he was discharged about seven weeks later. Plaintiff alleges that the protected activity was a but-for cause of termination when and as it occurred, based on timing, alleged heightened scrutiny, and contested application of recordkeeping and attendance procedures.

**25.** Plaintiff alleges loss of DMAN earnings and employment benefits, potential future earnings loss, and emotional harm including anxiety and disrupted sleep. Plaintiff seeks only legally recoverable damages, accounting for applicable mitigation and offsets without double recovery.

**COUNT I — TITLE VII RETALIATION (42 U.S.C. § 2000e-3(a))**

**26.** Plaintiff incorporates paragraphs 1 through 25. Plaintiff opposed conduct that he reasonably believed constituted unlawful race-based workplace harassment and discrimination and stated his intention to report it formally. Defendant knew of the complaints and then discharged Plaintiff. Plaintiff alleges the discharge would not have occurred when and as it did but for his protected opposition. This Count requires proof of Title VII employer coverage.

**COUNT II — RACE-RELATED RETALIATION (42 U.S.C. § 1981)**

**27.** Plaintiff incorporates paragraphs 1 through 25. Plaintiff worked for Defendant for compensation in an employment relationship, and he opposed race-related treatment affecting the terms and conditions of that relationship. Plaintiff alleges Defendant intentionally terminated his employment in retaliation for that opposition, impairing his right to the same contractual employment protections secured by 42 U.S.C. § 1981. This claim does not depend on Title VII's fifteen-employee minimum.

**COUNT III — MICHIGAN ELCRA RETALIATION (MCL 37.2701(a))**

**28.** Plaintiff incorporates paragraphs 1 through 25. Plaintiff opposed what he reasonably perceived as race-based discrimination in employment, leadership knew of the opposition, and Plaintiff alleges a causal connection between that opposition and the discharge.

**COUNT IV — TITLE VII RACE-BASED HOSTILE WORK ENVIRONMENT (42 U.S.C. § 2000e-2(a))**

**29.** Plaintiff incorporates paragraphs 1 through 25. Plaintiff experienced repeated unwelcome race-based language by a client, threats associated with the language, and a later racial epithet. He reported these matters to management. He alleges leadership knew of the repeated conduct but allowed the client to resume sessions without the anticipated corrective intervention, despite circumstances making further race-based harassment substantially certain. Plaintiff alleges that this course of conduct created a hostile working environment for which Defendant is legally responsible, subject to proof of Title VII coverage and the applicable standard for nonemployee harassment.

**COUNT V — MICHIGAN ELCRA RACE-BASED HOSTILE WORK ENVIRONMENT (MCL 37.2202)**

**30.** Plaintiff incorporates paragraphs 1 through 25 and alleges a race-based hostile work environment under Michigan's Elliott-Larsen Civil Rights Act based on the same repeated harassment, management knowledge, and alleged employer response, subject to proof of Defendant's legal responsibility for a nonemployee's conduct.

## RELIEF REQUESTED

WHEREFORE, Plaintiff requests appropriate judgment and the following relief to the extent legally authorized and proven:

**A.** A declaration of unlawful retaliation or discrimination and appropriate prospective equitable relief, including correction of personnel records or other nonretaliation measures where authorized;

**B.** Back pay, lost employment benefits, authorized prejudgment interest, and other actual economic loss;

**C.** Reasonable front pay where reinstatement is impracticable, or reinstatement if the Court finds it practical and appropriate;

**D.** Compensatory damages for proven emotional distress and other legally compensable injury;

**E.** Punitive damages to the extent permitted by federal law and adequate proof, and Michigan compensatory or exemplary damages only where legally available;

**F.** Taxable costs and reasonable attorney fees if permitted by the applicable statutes and law, and other authorized litigation expenses;

**G.** Other appropriate relief without duplicating recovery across overlapping claims.

## JURY DEMAND

Plaintiff demands a jury trial on all issues triable of right by jury.

Dated: October 30, 2026 Signature: ______________________

Herbert Harris Jr., Plaintiff, Pro Se

8231 N. Silvery Lane, Dearborn Heights, Michigan 48127

Phone: (734) 695-9921 Email: herbharrisjr@gmail.com

Exhibit A: EEOC Determination and Notice of Rights, issued August 4, 2026 (attached).

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Detroit Field Office**
477 Michigan Avenue, Room 865
Detroit, MI 48226
(313) 774-0020
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 08/04/2026

**To:** Mr. Herbert Harris Jr
8231 N Silvery Ln
DEARBORN HEIGHTS, MI 48127
Charge No: 471-2026-01936

EEOC Representative and email: ADAM PATON
INVESTIGATOR
ADAM.PATON@EEOC.GOV

---

### DETERMINATION AND NOTICE OF RIGHTS

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal.** You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 471-2026-01936.

On behalf of the Commission,

Digitally Signed By:RAMIRO GUTIERREZ
08/04/2026

RAMIRO GUTIERREZ
DIRECTOR

**Cc:**
Thomas Davis
Kienbaum Hardy Viviano Pelton & Forrest, P.L.C.
280 N. Old Woodward Suite 400
Birmingham, MI 48009

NA NA
Dannys Miracle Angel Network DMAN
22000 Northwestern Hwy
Southfield, MI 48075

Bobby Efros
DMAN Foundation
22000 NORTHWESTERN HIGHWAY
Southfield, MI 48075

Shannon Loverich
280 North Old Woodward Avenue, Suite 400
Birmingham, MI 48009

Please retain this Notice for your records.

# INFORMATION RELATED TO FILING SUIT UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court* ***under Federal law****. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

## IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* EEOC's official notice of dismissal**. You should **keep a record of the date you received EEOC's official notice of dismissal**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving EEOC's official notice of dismissal (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA, or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of your receipt of EEOC's official notice of dismissal and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

## ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

## HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of EEOC's official notice of dismissal, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method). You may also submit a

FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 471-2026-01936 to the District Director at RICHARD BURGAMY, 115 W. Washington St. South Tower Suite 600, Indianapolis, IN 46204.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 471-2026-01936 to the District Director at RICHARD BURGAMY, 115 W. Washington St. South Tower Suite 600, Indianapolis, IN 46204.

You may request the charge file up to 90 days after receiving EEOC's official notice of dismissal. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.